Brayden Monk, Appellant Dr. Jonathan Castille So we have several cases in the circuit. Devlin versus Fletcher. Sims versus Sidney at Madisonville. Atkins versus Hawkins. Kinney versus Weaver. And those are all dealing with supervisors. In Sims, it states that he was a co-worker, but he was a supervisor. He was a chief. And in the other cases, these are outside the closer's stating that it was improper influence. But with regards to these teachers, the best question posed to this panel is, what is required of a defendant to carry their initial burden when the challenge of conduct has no relation to the actual adverse action? Because again, we're in an appointment law context. The teachers had no role. They weren't part of an investigation for the termination. They weren't made witnesses. There was no statements by them. But it's just the complicit allegation that they somehow conspired with the principal and superintendent to terminate him. And if we look in the context of, let's say, a Jane Doe, John Doe case, where a parent brings an ADA claim against a school district, excessive corporal punishment, teachers still have qualified immunity and state that their discretionary authority was classroom management and student supervision. So if they have discretionary authority in those cases regarding child abuse and neglect, I believe they would have discretionary authority here. Again, but it's concerned that if someone's brought into a suit in which they are public officials regarding to the Texas Education Code by state law, so long as they're acting within discretionary authority, of course, that they have to bear the burdens of the cost of litigation, go through discovery and trial, where they have no involvement in the actual alleged constitutional deprivation. So I believe the discretionary authority problem is carried there, especially for Dr. Porter and Dr. Oliva with regards to personnel matters. And with the teachers, too, they really have no involvement, but I guess their roles in day-to-day classroom management and student supervision should still allow them to carry their additional burden. And very briefly, Counsel General really go over the procedural due process and substantive due process claims. I think that is pretty straightforward in the brief. Essentially, the circuit in Rodriguez versus Isleta in the school district stated that the proceedings in the Chapter 21 Education Code satisfies due process requirements. You get notified of the proposed termination, get an opportunity to refute those allegations by asking for a trial-like hearing, an independent hearing examiner. The independent hearing examiner is called to decide whether or not there is good cause for termination. That was done here. And it brings it back to the court, which the employee had another opportunity for a hearing to refute those allegations that happened here. The court did find and adopt those findings of facts and conclusions of law. Then he has another opportunity. He can appeal it to the Texas Education Commissioner. That was done here. And the Education Commissioner also found that there was good cause. So it wasn't a one-and-done thing. It was very by-the-book, as required by the Texas Education Code. And while he does have a property interest in his contract, there's no expectation beyond the term of that contract. So his contract was to 2022-2023 school year. And for the May contract termination, he had to have good cause finding. And that's what was done here. And he speaks about the Texas Family Code, section 261.110, provides him with some federal property right interests. That's just false. That's an anti-retaliation statute, similar to the Texas whistleblower act, in which they can bring a cause to action under state law and state court. So again, I think that's clear in the briefings. But I do want to go a little bit more into the First Amendment retaliation, because we did see in Sins v. the City of Madisonville that a non-decision maker can be held liable, as long as there's a recommendation. And I believe, a little bit further, in Belden v. Fletcher, that there was improper influence included on the decision maker. Well, you heard the discussion about the timeline involving his filing of a response and the funeral and the delay and all of that. Would you comment on what is your client's position as to that timeline and as it related to the reason for termination? Yeah, while we requested the statement from Dr. Castillo, there wasn't a reason for termination. And we have a full blown hearing in the hearing center regarding what happens to the cause. So what was it? Excuse me, I don't mean to interrupt you. So what was the reason for termination, if it was not? The primary reason was for taking property that was unauthorized from the warehouse in violation of multiple different policies. All right, so it was the taking of the property, not the failure to provide a statement. No, no. The failure to provide a statement. He did provide a statement, and that was taken into consideration as part of that local record of the hearing center as well as the board and commissioner. So the ultimate decision then by the commissioner was that the evidence showed that he had taken the property improperly? Is that right? I'm not putting words in your mouth. I just want to understand. Essentially, that is correct. And there are also other different policies regarding code of ethics that found that to be violated. What code of ethics? The educator code of ethics. What did he do to violate it? So I don't have it right in front of me, but there's several things similar to an attorney code of ethics that you cannot act outside of the expected reasonable expectations of your job. What did it relate to? So he wasn't even, that wasn't part of his job to go and spray the gym. We had janitors and historians to do that, so he wouldn't have his weight to do that. And it wasn't just the sprayers. There were other supplies that were valued up to about $2,000 that were also taken, and he didn't have authorization to do so. But the sprayers were obviously the most expensive items, which is why they were focused on those. So going back to the recommendation to properly enclose requirements to show individual causation, that immediately takes out Dr. Oliva, Ms. Biavenu, Mr. Oliver, because they made no recommendation to the board for the termination. Now, with regards to Dr. Cordery, while he made the recommendation, there still has to be shown some type of retaliatory animus. And I'll bring the court's attention to page 298 of the record. It still only states that Dr. Cordery proposed termination of Castile's contract without proper notice. That's the extent of the allegation with regards to Dr. Cordery. Again, we're looking at individual causation. So we take each allegation against each individual defendant and not just group them all together. So looking at the complaint, that falls incredibly short of what is needed to show constitutional violation. And I think we did discuss a little bit about whether or not the cooperation being imbued by CPS agents affected speech. He didn't provide any case law that would make it beyond debate that acting within his job duties, the expectations to respond to CPS agents regarding potential child abuse would be considered speech by a public citizen and be determined as protected speech. And he also cites two plain versus franks, but that's case indistinguishable because that was sworn testimony outside of the job duties. Here, this is just an everyday scenario, which obviously we have law enforcement, either it be local or state, having questions with regard to students in the care of the district that voted to speak on the matter and speak truthfully on the matter. Moving to the civil conspiracy. Obviously, the district court did not get to a discussion with regards to the individual at the least, because there was no finding in constitutional violation. So the argument that they're caught by the Indian is defeated. We still have this inter-corporate conspiracy doctrine, in which all these employees were employed by a law firm in a big school district. It's one single entity. But one single entity cannot conspire by itself. And most importantly, you still have to show an agreement. You did allege an agreement, but not just the mere allegation of the agreement, but by showing some context that they met, as we saw in other cases. I believe that was Pebble versus Fletcher, where there were several meetings between the judges, the DA, and the mayor of wanting to get rid of the plaintiff. Here, there was no allegations that they ever even met. It's just a conclusory allegation. And it's a legal conclusion that they conspired together to deprive Castillo of his constitutional rights. That's the extent of the allegation in regards to an agreement being made. And that alone should alleviate the individual defendants or co-author in a school district being found liable for saying that there was a constitutional violation for civil conspiracy purposes. And again, whether it's analyzed under 1985 or 1983, similar elements to both. Just 1985 requires some class-based discriminatory evidence. 1983 is a little bit similar, just showing that there was an agreement and a constitutional deprivation occurred. The inter-corporate conspiracy doctrine still applies. And lastly, counsel spoke about deliberate indifference, trying to get to a point where there is no liability. There was only one allegation of that, and that wasn't a legal conclusion in the request for relief that the district acted deliberately indifferently. That's a conclusory allegation. It should not be considered. We saw that fall promptly. The rest of my time, I just wanted to ask this panel to affirm the district court's decision. Yes, thank you, Mr. Allen. Mr. Monk for a vote. So speak to the whole due process issue and also to the question of whether there was additional property that was allegedly taken from the warehouse or whatever, and then whether all of that was considered up the line all the way through to the commissioner. Yes. So the hearing examiner really would exceed their authority in delving off into these constitutional issues. Their jurisdiction is really limited to whether there was a violation of some school laws of the state. So our position is that really, the hearing examiner could not delve off into and could not without having a jurisdiction to get into the due process issue or the First Amendment issue. So for the due process issue, the way I'll talk about this is with respect to the family code and district policy is providing some rights there. Well, did the hearing examiner address the question of the taking of the property? The hearing examiner attempted to address the issue but really could not delve into the circumstances surrounding First Amendment retaliation or due process such that he would even have notice that this was a violation. All right. Let me ask a question maybe for the third time. Did the hearing examiner address at all the question of whether the property was taken or whether that was, if so, whether that was enough of a cause for termination? There were facts and testimony related to that issue. And so it was addressed at the hearing by testimony. For example, to go back to a question from Judge Richman, there was an individual, Ms. Williams, Demetria Williams, who had interacted with Dr. Castile around the time of the checkout of these items. And so she did offer testimony at the hearing. That was presented in terms of the facts at the hearing. The discussion at the bank would be about, well, did she tell him that he needed to do this in a different way? Or did anybody identify to him that he needed to sign out specifically to check these items out? He did use these items. They were there and generally available for use on the campus during this COVID emergency time. They were donations. And so their statement that he used the items or used thousands of dollars of items, that's not an appropriate comment. What did the hearing examiner find? The hearing examiner found factually that the district had met its burden for non-renewable and the recommendation for non-renewable. On what factual basis? On the factual basis of the allegation of this fogger issue and the delay of notice of providing the statement. Those things were all addressed at the hearing factually with testimony. I think it's just the legal conclusions that we really question. And there was an appeal from that position that was part of this case as it began. I think now, of course, jurisdiction really would be associated with the 1st and 14th Amendment claims and the First Amendment complaint. Those 1983 claims would become the anchor claims for any other jurisdiction that the court would exercise, such as related to the Texas Whistleblower Act claim. But the Family Code does provide a basis for Dr. Castile to say that his cooperation with CPS is required. Can you give me the site to that? Right. That is Texas Family Code 206.011, I believe, is what we're dealing with. 206. what? .011, I believe, is what we're dealing with there. It is cited in the briefing as well. And there's snippets of this particular provisions that make it into the district policy, local district policy BG as well. And so that all gets incorporated and provides additional support for Dr. Castile that his participation was required. And so then we sort of tie in with some cases that we cite in the briefs, which are, one, Johnson v. City of Shelby. The court looked at the factual allegations in the complaint in addition to these statements about deliberate indifference. I think counsel discounts those factual allegations altogether. And there's a detailed factual basis for the claims. But the other case I'll point to is Kentucky v. Department of Corrections, which discusses that a state creates a liberty interest by restricting official discretion. And so with these restrictions of discretion as to the district that come from the manly code and from the local district policy, there's tying in support of the due process claim in that way as well for Dr. Castile. Thank you, Mr. Monk. Your case and all of today's cases are under submission. And the court is in recess until 9 o'clock tomorrow. Thank you, Your Honor.